

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-31-2006

# USA v. Jenkins

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2392

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Jenkins" (2006). *2006 Decisions.* Paper 1028.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1028

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-2392
_____

UNITED STATES OF AMERICA

v.

RICHARD JENKINS,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 03-cr-00283)
District Judge: Honorable Thomas M. Hardiman
_____

Submitted Under Third Circuit LAR 34.1(a)
on May 16, 2006

Before:  RENDELL, VAN ANTWERPEN, and WEIS, Circuit Judges

(Filed:  May 31, 2006)

_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Richard Jenkins appeals from a final order of conviction and sentence, challenging

the District Court's denial of his suppression motion and the denial of his motion to

dismiss on jurisdictional grounds.  Our jurisdiction to review these issues arises under 28

U.S.C. § 1291. We review the District Court's denial of a motion to suppress for "clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." United States v. Inigo, 925 F.3d 641, 656 (3d Cir. 1991). We also "exercise plenary review over the District Court's assertion of federal jurisdiction." United States v. Singletary, 268 F.3d 196, 198 (3d Cir. 2001). We find no error in the District Court's rulings and will AFFIRM.

On the evening of April 23, 2004, City of Pittsburgh Police Lieutenant Daniel Herman received an anonymous informant's tip that an "older black male wearing all blue, pushing a shopping cart full of aluminum cans" was selling drugs in front of the informant's house, on the 1400 block of North Franklin Street in the neighborhood of Manchester, North Side, in Pittsburgh.

Two officers, Martin Devine and Scott Love, were dispatched to the scene to check out the tip. They arrived there, looking for someone fitting the informant's description, and located such a person a block and a half from the location indicated in the tip. Not surprisingly, he was the only person in the area fitting the description. As the officers pulled within eight feet of him, the man who fit the informant's description, Richard Jenkins, was pulling cans from the cart and smashing them as if he intended to recycle them.

The officers got out of the car and stood next to each other but did not approach Jenkins. They identified themselves to Jenkins and displayed their badges, worn on chains around their necks. When they asked if they could speak with him, he replied,

2

"sure you can."

Officer Devine testified at the suppression hearing as follows:

> We explained to him that we received – received a complaint that a male fitting his description had just sold drugs down at the 1400 block of North Franklin Street. And then we asked him if he knew anything about it, and he said no, he did not, he doesn't sell drugs, he uses drugs. We then asked him if he had any drugs on him, and he stated that he had a bag in his pocket, a bag of heroin in his pocket.

Jenkins told the officers that the bag of heroin was in his front right pocket. One of the officers then reached into the pocket, where he found 53 bags of heroin. The officers arrested Jenkins and conducted a search incident to the arrest. They recovered a loaded .38 caliber revolver, cash in the amount of $294.62 and a cell phone.

Based on these facts, a grand jury in the Western District of Pennsylvania indicted Jenkins, a convicted felon, on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).

Jenkins moved to suppress the officers' testimony against him. At the suppression hearing, Officers Devine and Love testified to the circumstances of Jenkins's arrest as described above, while Jenkins testified to a different version of events, alleging that the officers had searched him immediately upon their arrival at the scene. Jenkins admitted that he was a heroin addict and that he had injected heroin an hour before the incident. The District Court credited the officers' testimony and denied the suppression motion.

In a written opinion, the District Court concluded that the encounter between the officers and Jenkins did not violate Jenkins's Fourth Amendment rights. It held that

3

interaction between Jenkins and the officers did not rise to the level of a <u>Terry</u> stop, as police officers may approach individuals without reasonable suspicion or probable cause and may question them without violating the Fourth Amendment. <u>See</u> <u>Florida v. Royer</u>, 460 U.S. 491, 497 (1983). Such an encounter does not "trigger Fourth Amendment scrutiny unless it loses its consensual nature." <u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991).

The District Court concluded that the officers' testimony was "consistent and credible" and that their depiction of the events involved no force or show of authority to restrain Jenkins in any way. Both officers testified that Jenkins could have terminated the conversation, and, although Jenkins testified he did not feel free to leave, the District Court found that a reasonable person would have felt free to terminate the encounter. Accordingly, "the encounter between the officers and Mr. Jenkins did not rise to the level of a <u>Terry</u> stop but rather was a consensual citizen encounter."

The District Court also rejected Jenkins's argument that the evidence recovered during his post-arrest search should be suppressed as "fruits of the poisonous tree" because the officers failed to give him <u>Miranda</u> warnings before asking if he had any drugs on him. The Court concluded the conversation between Jenkins and the officers was not a "custodial interrogation," and therefore no <u>Miranda</u> warnings were required. It reasoned as follows:

> The Officers approached Mr. Jenkins on an open street, identified themselves, requested and were granted permission to speak with him, and conducted the initial portion of the

4

> questioning on a voluntary basis that was free from coercion. From the time Officer Love began questioning him until he admitted heroin possession, Mr. Jenkins was free to terminate the encounter and leave the area. Neither the manner of approach by the officers nor the tone or extent of their questioning impeded Mr. Jenkins' freedom of movement in any way. There was nothing coercive or custodial about the circumstances until Mr. Jenkins admitted to heroin possession.

We agree with the District Court and find no error in its analysis, its reasoning, or its conclusion.

Jenkins also renews on appeal his argument that Congress exceeded its authority under the Commerce Clause when it enacted 18 U.S.C. § 922(g)(1). However, as Jenkins himself acknowledges, we are bound by our court's decision in Singletary, 268 F.3d at 204-05, to reject this claim. Nonetheless, Jenkins has preserved his claim in this regard in the event of en banc or Supreme Court review.

Finally, Jenkins contends that § 922(g)(1) was unconstitutionally applied to his case because the facts demonstrate only intrastate possession of a firearm. However, the government offered evidence that the weapon possessed by Jenkins originated in Brazil. Manufacture outside Pennsylvania "provides the requisite nexus to, and proof that the firearm[] traveled in, interstate commerce," United States v. Leuschen, 395 F.3d 155, 161 (3d Cir. 2005), such that Jenkins's challenge on this basis must fail.

For the reasons stated above, we agree with the rulings of the District Court challenged by Jenkins and accordingly will AFFIRM the Orders of the District Court.

5